IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CATHLEEN HANDFELT, § | |
|     Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:16-CV-2670-N-BK |
| § | |
| NANCY A. BERRYHILL, § | |
| Acting Commissioner of Social Security, § | |
|     Defendant. § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to *Special Order 3* and 28 U.S.C. § 636(b)(1)(B)&(C), this case is now before the Court for the submission of findings of fact and a recommendation for the disposition of the parties' cross-motions for summary judgment. For the reasons that follow, *Plaintiff's Motion for Summary Judgment*, Doc. 15, should be **GRANTED**, *Defendant's Motion for Summary Judgment*, Doc. 17, should be **DENIED**, the Commissioner's decision should be **REVERSED**, and the case should be **REMANDED** for further administrative proceedings.

### I. BACKGROUND

**A.**     **Procedural History**

Plaintiff Cathleen Handfelt seeks judicial review of a final decision by the Commissioner denying her claim for disability insurance benefits and supplemental security income payments under the Social Security Act ("the Act"). *See* Doc. 16. In August 2013, Plaintiff filed for benefits, alleging disability beginning October 31, 2010. Doc. 12-6 at 2. Plaintiff later amended her disability onset date to February 5, 2014. Doc. 12-3 at 33. Her applications were denied at all administrative levels, and she now

seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Doc. 12-3 at 2-4; Doc. 12-3 at 14-24; Doc. 12-5 at 3-8; Doc. 12-5 at 14-17.

**B.     Factual Background**

Plaintiff was 50 years old on her amended alleged disability onset date. Doc. 12-3 at 33; Doc. 12-6 at 2. She completed tenth grade and had past relevant work as a credit and collection manager. Doc. 12-3 at 36, 57; Doc. 12-7 at 46-49.

In November 2013, Dr. Margaret Meyer, M.D., performed a mental residual functional capacity ("RFC") assessment on Plaintiff, finding that Plaintiff "can understand, remember and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions and respond appropriately to changes in routine work setting." Doc. 12-4 at 12-13. In February 2014, Dr. James B. Murphy, Ph.D., completed a virtually identical mental RFC assessment. *See* Doc. 12-4 at 24-25.

Between May and December 2014, Plaintiff received psychotropic medication management at Lakes Regional MHMR Center ("MHMR"), during which she was diagnosed with major depressive affective disorder, recurrent episode, severe without mention of psychotic behavior, as well as anxiety, and assigned a global assessment of functioning ("GAF") score of 35. *See* Doc. 12-10 at 2, 5-7, 15, 18-28. In July 2014, Nurse Practitioner Donna Haynes and Dr. Eric Scott Kemp, M.D., jointly assessed Plaintiff's mental RFC, noting significant limitations in her understanding and memory, sustained concentration and persistence, social interactions, and adaptation. *See* Doc. 12-9 at 92-95.

2

## C. The ALJ's Findings

In May 2015, the ALJ denied Plaintiff's application for benefits. The ALJ determined that Plaintiff had the severe impairments of degenerative disc disease status post cervical spine surgery, degenerative joint disease, and major depressive disorder. Doc. 12-3 at 16. As relevant here, the ALJ found that Plaintiff had the mental RFC to "understand, carry out and remember simple, 1 to 2 step tasks, repetitive in nature, learned in 30 days or less, (Unskilled work)." Doc. 12-3 at 20. The ALJ concluded that while Plaintiff could not return to her past work, she could perform other work in the national economy and, thus, was not disabled. Doc. 12-3 at 23-24.

## II. LEGAL STANDARD

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be

performed.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett*, 67 F.3d at 564.  Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.

## III. ARGUMENT & ANALYSIS[1]

Plaintiff argues that the Commissioner's determination of non-disability should be reversed because the ALJ (1) erred when declining to adopt Nurse Practitioner Haynes and Dr. Kemp's joint opinion without first conducting an analysis of the factors under 20 C.F.R. section 404.1527(c); (2) erred in determining Plaintiff's mental RFC; and (3) impermissibly relied on the Medical-Vocational Guidelines at step five. Doc. 16 at 16. Because remand is required solely on the ground of error raised in Issue 2, the remaining arguments are not addressed. Nevertheless, Plaintiff may raise those issues on remand. 20 C.F.R. § 404.983 (providing that when a case is remanded from federal court, the ALJ may consider any issues relating to the claim); 20 C.F.R. § 416.1483 (same).

Regarding Issue 2, Plaintiff argues that the ALJ violated the Fifth Circuit's holding in *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995) when, after rejecting all medical opinions regarding Plaintiff's work-related mental limitations, he independently determined she could perform "simple 1-2 step tasks, repetitive in nature, learned in 30 days or less." Doc. 16 at 29. In response, Defendant contends, *inter alia*, that the ALJ has the sole responsibility of determining Plaintiff's RFC. Doc. 18 at 15. Additionally, Defendant maintains that substantial evidence supports the ALJ's mental RFC determination, specifically citing Plaintiff's MHMR treatment records, which

---

[1] In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. *See* FED. R. CIV. P. 56(c)(1)(A) (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation marks and citation omitted).

consistently "noted normal or mild findings" and the fact that "Plaintiff sought treatment on only a handful of occasions." Doc. 18 at 14 (citing Doc. 12-10 at 2-5, 15-18, 28-29). In reply, Plaintiff maintains that these "uninformative notations" are precisely the kind of "inscrutable medical data" that, under *Ripley*, is insufficient to support an RFC determination, as the records say nothing about whether Plaintiff could understand, carry out, and remember repetitive one- or two-step instructions as the ALJ concluded. Doc. 19 at 7-8.

The RFC is an assessment, based upon all relevant evidence, of a claimant's ability to work, despite her impairments. 20 C.F.R. § 404.1545(a). Stated differently, it is the most a claimant can do, notwithstanding her physical and mental limitations. *Id.* The RFC determination falls solely to the ALJ, who alone is responsible for resolving any conflicts in the evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam). A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (per curiam).

In *Ripley*, the ALJ ruled that the claimant could perform sedentary work even though there was no medical evidence or testimony supporting that conclusion. 67 F.3d at 557. The appellate court noted that the claimant's record contained a vast amount of evidence establishing that the claimant had a back problem, but did not clearly establish what effect that condition had on his ability to work. *Id.* Thus, the court remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557-58. The court rejected the Commissioner's attempt to argue that the medical evidence

6

substantially supported the ALJ's conclusion because the court was unable to determine the effects of the claimant's conditions, "no matter how 'small'," on his ability to work, absent a report from a qualified medical expert. *Id.* at 557 n.27.

Here, the ALJ found Plaintiff capable of performing simple one- to two-step tasks, repetitive in nature, and learned in 30 days or less, based on her "limited history of mental health treatment"—noting that she has not required inpatient psychiatric hospitalization, emergent or immediate outpatient mental health treatment and that no treating physician had assigned any mental-health-related work restrictions. Doc. 12-3 at 20-22. While the ALJ's mental RFC determination is generally consistent with Drs. Meyer's and Murphy's assessments, *see* Doc. 12-4 at 12-13, 25, neither assessment was relied on by the ALJ. Doc. 12-3 at 23. Likewise, Dr. Kemp's mental RFC assessment contains findings that might also support the ALJ's determination, *see* Doc. 12-9 at 92-94; however, it also was not accepted by the ALJ. *See* Doc. 12-3 at 23 ("The claimant's treating source, Dr. Kemp, submitted a mental residual functional dated July 18, 2014, that *if accepted*, would support a finding of 'disabled' . . . .") (emphasis added).

Defendant's argument that the ALJ's mental RFC determination is nevertheless supported by substantial evidence is unavailing. Specifically, Defendant contends that Plantiff's MHMR treatment records constitute substantial evidence to support the ALJ's metal RFC assessment. Doc. 18 at 14 (citing Doc. 12-10 at 2-5, 15-18, 28-29). However, upon review, these records merely detail the intervention recommended for Plaintiff, her progress, and her response to the intervention, and do not discuss any work-related limitations. *See* Doc. 12-10 at 2-5, 15-18, 28-29. As was the case in *Ripley*, these types of records do "not clearly establish . . . the effect [Plaintiff's] condition had on [her]

7

ability to work." *Ripley*, 67 F.3d at 557; *see Fitzpatrick v. Colvin*, No. 15-CV-3202-D, 2016 WL 1258477, at *8 (N.D. Tex. Mar. 31, 2016) (Fitzwater, J.) (finding that the ALJ's mental RFC determination was not supported by substantial evidence where the ALJ rejected the only medical opinions supporting the determination and the other evidence did not support a determination that the plaintiff could perform such work despite his impairments).

While the RFC determination falls solely to the ALJ, *Chambliss*, 269 F.3d at 522, this Court has consistently found that an ALJ contravenes *Ripley* under circumstances such as those presented here. *See Raper v. Colvin*, No. 16-CV-239-N, 2017 WL 663557, at *5 (N.D. Tex. Jan. 3, 2017) (Stickney, J.) (collecting cases holding that an ALJ is not permitted to reject all relevant medical opinions and then independently assess a claimant's RFC without medical evidence addressing the effects of the claimant's impairments on the claimant's ability to work), *adopted by* 2017 WL 661402 (N.D. Tex. Feb. 17, 2017) (Godbey, J.); *see also Oderbert v. Barnhart*, 413 F. Supp. 2d 800, 803 (E.D. Tex. 2006) ("*Ripley* clarifies that an [ALJ] cannot determine from raw medical data effects of impairments on claimants' ability to work.").

In short, just as in *Fitzpatrick*, "the court is not able to agree that the evidence substantially supports the ALJ's conclusion that [Plaintiff] was not disabled, because there is no medical opinion supporting the ALJ's finding that [Plaintiff] has the RFC" to perform simple 1-2 step tasks, repetitive in nature, learned in 30 days or less. *Fitzpatrick*, 2016 WL 1258477, at *8. Also like *Fitzpatrick*, "the ALJ improperly made an independent RFC finding after declining to rely on any of the medical opinions addressing the effects of [Plaintiff's] mental impairments on [her] ability to work." *Id.*

8

(citing *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (per curiam) ("In *Ripley*, we held that an ALJ may not – without opinions from medical experts – derive the applicant's [RFC] based solely on the evidence of his or her claimed medical conditions. Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions.")).

That notwithstanding, reversal and remand is only warranted if Plaintiff can show that she was prejudiced by the ALJ's error. *Ripley*, 67 F.3d at 557 (citation omitted). Stated differently, remand is required only where there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error. *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010) (per curiam). That burden is satisfied here. Had the ALJ requested a medical source statement evaluating the effects of Plaintiff's mental limitations on her ability to work, there is at least a possibility that he could have placed greater restrictions on her mental RFC. *Thornhill v. Colvin*, No. 14-CV-335-M, 2015 WL 232844, at *11 (N.D. Tex. Dec. 15, 2014) (Horan, J.) (finding prejudice "where the ALJ could have obtained evidence that might have changed the result – specifically, a medical source statement"), *adopted by* 2015 WL 232844 (N.D. Tex. Jan. 16, 2015) (Lynn, J.).

## IV. CONCLUSION

In light of the foregoing, it is recommended that *Plaintiff's Motion for Summary Judgment*, Doc. 15, be **GRANTED**, *Defendant's Motion for Summary Judgment*, Doc.

17, be **DENIED**, the Commissioner's decision be **REVERSED**, and the case be **REMANDED** for further administrative proceedings.

**SO RECOMMENDED** on September 8, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE